UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Cardigan Mountain School

    v.                                                          Civil No. 14-cv-116-LM
                                                                 Opinion No. 2014 DNH 216
New Hampshire Insurance Company


**O R D E R**

    The Plaintiff, Cardigan Mountain School ("Cardigan"), has received notice of an unrelated potential legal claim arising from events that are alleged to have taken place in the late-1960s.  Mindful of the legal costs undoubtedly involved in defending this claim, Cardigan undertook an attempt to locate the insurance policy that it believes to have been in place at the time.  This attempt was unsuccessful.

    Nevertheless, Cardigan assembled certain circumstantial evidence that it contends is sufficient to demonstrate that the Defendant, New Hampshire Insurance Company ("NHIC"), insured Cardigan during the relevant period of time and must now bear the legal costs involved in defending the potential claim. Cardigan has brought suit seeking a declaratory judgment that NHIC is liable for the cost of defending against the claim, and that NHIC must also cover Cardigan's legal fees in connection with the filing and prosecution of this action.

NHIC has filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that this court lacks subject matter jurisdiction, and that Cardigan has failed to adequately state a claim.  As more fully set forth below, the court finds that it does have subject matter jurisdiction, but that Cardigan has indeed failed to state a claim.  Thus, NHIC's motion to dismiss will be GRANTED.

**Factual Background**[1]

Cardigan first received notice of the potential claim in the spring of 2013.  Compl. ¶ 1.  The nature of the claim is not immediately apparent, but it relates to events that are alleged to have occurred during the 1967-68 school year.  Id.

As noted, Cardigan unsuccessfully attempted to locate the insurance policy that it believes to have been in place at the time.  Id.  Once this search proved fruitless, Cardigan contacted American International Group ("AIG"), NHIC's parent company, with an inquiry as to whether AIG had any relevant records.  Id. ¶ 2.  To date, AIG has also been unable to turn up any evidence of an applicable policy.  Id. ¶ 3.

Nevertheless, Cardigan alleges that it has gathered sufficient circumstantial evidence to conclude that NHIC did

---

[1] The facts are summarized from Cardigan's Complaint for Declaratory Judgment (Document No. 1-1; cited as "Compl.").

provide liability coverage during this period.  Cardigan principally relies on a 1971 financial report which indicates that NHIC provided coverage from September 15, 1970, to September 15, 1971.  Id. ¶¶ 13-14.  Needless to say, the period from 1970 to 1971 is after the 1967-68 school year, the timeframe at issue.  So, Cardigan attempts to bolster its position by including several additional allegations:

- The complaint references Mr. Cornelius Bakker, Cardigan's business manager from 1967 to 1970. Id. ¶ 15.  First, the complaint contends that Mr. Bakker does not believe that Cardigan changed insurance carriers during his tenure.  Id. ¶ 16. Second, the complaint notes that Mr. Bakker worked with A.B. Gile, Inc., a local insurance broker who, the complaint alleges "upon information and belief," had a close association at the time with NHIC.  Id. ¶¶ 20-21.

- The complaint also references Mr. Phillip Wheeler, a retired accountant from Vermont, who was one of the two principals at the auditing firm that prepared the 1971 financial report. Id. ¶ 17.  The complaint notes Mr. Wheeler's recollection that, in preparing the 1971 report, auditors compared the 1970 to 1971 financials to the 1969 to 1970 financials.  Id. ¶ 18.  Mr. Wheeler suggests that the auditors would have noted a change in insurance providers between those two periods had one occurred.  Id. ¶ 19.

This represents the full extent of Cardigan's evidence supporting its contention that NHIC underwrote a liability policy covering the 1967-68 school year.  When AIG did not affirm the existence of such a policy, Cardigan sought

declaratory judgment in state court, and NHIC removed the action to this court.  Now, NHIC has moved to dismiss based on lack of subject matter jurisdiction and failure to state a claim.

## Rule 12(b)(1) - Subject Matter Jurisdiction

Pursuant to Article III of the United States Constitution, "the exercise of the judicial power is limited to cases and controversies.  Beyond this it does not extend, and unless it is asserted in a case or controversy within the meaning of the Constitution, the power to exercise it is nowhere conferred." Muskrat v. United States, 219 U.S. 346, 356 (1911) (internal quotation marks omitted).  NHIC has moved to dismiss on grounds that the court lacks subject matter jurisdiction because there is not yet a case or controversy.  More specifically, NHIC takes the position that because Cardigan has merely received notice of a potential claim, but has not yet been sued, the dispute is not "ripe" and the court lacks subject matter jurisdiction to hear it.  The court rejects this argument, however, and finds that it does have subject matter jurisdiction.

I.  Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits defendants to seek dismissal of claims brought against them based on the court's lack of subject matter jurisdiction.  Fed. R. Civ. P.

12(b)(1). Though the plaintiff bears the burden of proving the existence of subject matter jurisdiction, in weighing a motion to dismiss under Rule 12(b)(1), district courts construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in the plaintiff's favor. Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).

II.  Discussion

"Requests for a declaratory judgment may not be granted unless they arise in a context of a controversy 'ripe' for judicial resolution." Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322, 651 F.3d 176, 188 (1st Cir. 2011) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)). "Questions of ripeness . . . are gauged by means of a two-part test." Ernst & Young v. Depositors Econ. Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995). Courts consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013) (quoting Abbott Labs, 387 U.S. at 149). Both of these inquiries are highly fact-dependent, and the "various integers that enter into the ripeness equation play out quite differently from case to case . . . ." Ernst & Young, 45 F.3d at 535. As a general matter, both prongs of the test must be

5

satisfied in order for a claim to be considered ripe. Roman Catholic Bishop of Springfield, 724 F.3d at 89.

### A. Fitness of the Issues

"The critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young, 45 F.3d at 536 (quoting Mass. Ass'n of Afro-American Police, Inc. v. Bos. Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992) (per curiam)). To this end, courts assess the "immediacy and reality" of the claim, and gauge the likelihood that the dispute will come to pass. Id. at 539; see also Mass. Ass'n of Afro-American Police, Inc., 973 F.2d at 20-21 (finding that a dispute was not ripe where it involved multiple highly speculative future events). A claim that is "not rooted in the present, but depends on a lengthy chain of speculation as to what the future has in store" is likely not ripe. Ernst & Young, 45 F.3d at 538.

Though a close call, Cardigan's claim is fit for judicial decision. To be sure, the immediacy and reality of a dispute between Cardigan and NHIC hinges on the actions of a third party. If the prospective plaintiff who submitted notice of a claim does not ultimately decide to file suit, Cardigan will not need to defend against it and there will be no question as to

6

NHIC's obligation to indemnify.  But, this scenario does not present a "lengthy chain of speculation."  Id.  Rather, the complaint alleges that Cardigan has already received a demand letter threatening legal action.  Compl. ¶ 9.  Construing the complaint liberally and indulging all reasonable inferences in the plaintiff's favor, as the court must, Aversa, 99 F.3d at 1209-10, Cardigan has sufficiently demonstrated the likelihood of an immediate and real dispute with NHIC.  Thus, Cardigan has satisfied the fitness portion of the ripeness inquiry.

    B.    <u>Hardship to the Parties</u>

The second portion of the ripeness inquiry "focuses on the hardship that may be entailed in denying judicial review.  In general, the greater the hardship, the more apt a court will be to find ripeness."  Ernst & Young, 45 F.3d at 536.  "[T]his part of the inquiry should focus on the judgment's usefulness.  Rather than asking, negatively, whether denying relief would impose hardship, courts [should ask] . . . whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest."  State of R.I. v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1999); see also 15 James WM. Moore et al., Moore's Federal Practice ¶ 101.76(2) ("The court must inquire whether the subject of the challenge presents a true dilemma for the parties, or whether

their course of action would be unlikely to be altered regardless of any decision that the court could render.").

Cardigan's uncertainty regarding the existence and scope of its liability coverage during the 1967-68 school year has significant implications on its approach to resolving the potential claim.[2]  Judicial clarification as to whether Cardigan was insured during this time would no doubt provide useful, practical assistance in resolving the uncertainty.  And, judicial clarification would no doubt benefit NHIC as well by clarifying its obligations and allowing it to engage in the defense as quickly as possible.  Thus, Cardigan has satisfied the hardship prong of the ripeness inquiry, and has sufficiently carried its burden of demonstrating subject matter jurisdiction.

### Rule 12(b)(6) - Failure to State a Claim

NHIC contends that Cardigan has failed to state a claim upon which relief can be granted because it has failed to adequately allege facts demonstrating the existence of an insurance policy covering the applicable period of time.  For the reasons that follow, the court concurs.

---

[2] See, e.g., Compl. ¶ 27 ("The issue of whether Cardigan has . . . coverage for the alleged events is an essential element of any settlement discussions with the putative plaintiff, and more generally, will affect Cardigan's decision to even engage in settlement discussions . . . given the possibility that any such discussions undertaken without the insurance company's agreement could potentially prejudice coverage.").

I.  Standard of Review

"To survive a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6), [a] plaintiff must make factual allegations sufficient to state a claim to relief that is plausible on its face." D'Angola v. Upstate Mgmt. Servs. LLC, No. 11-cv-87-PB, 2011 U.S. Dist. LEXIS 130081, at *3 (D.N.H. Nov. 9, 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for this misconduct alleged." Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks omitted).

This court uses a two-pronged approach in deciding a motion to dismiss.  See D'Angola, 2011 U.S. Dist. LEXIS 130081, at *3 (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)).  First, the court "screen[s] the complaint for statements that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a course of action." Id. (citations omitted) (internal quotation marks omitted). Second, the court "credit[s] as true all non-conclusory factual allegations and the reasonable inferences drawn from those

9

allegations, and then determine[s] if the claim is plausible." Id. at *3-4. If, when viewed against this plaintiff-friendly backdrop, "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

II. Discussion

The parties dispute not only whether Cardigan has proffered sufficient circumstantial evidence of coverage, but they also dispute whether, under New Hampshire law, it is the insured or the insurer who bears the burden to prove coverage.

A. Burden of Proof

Cardigan's claim for declaratory judgment is brought pursuant to N.H. Rev. Stat. Ann. § 491:22, which, generally, permits "[a]ny person claiming a present legal equitable right or title" to seek a declaratory judgment in the New Hampshire state and federal courts. See Radkay v. Confalone, 575 A.2d 355, 356-57 (N.H. 1990) (citing N.H. Rev. Stat. Ann. § 491:22). Of significant importance, New Hampshire law provides further that "[i]n any petition under [§ 491:22] to determine the coverage of a liability insurance policy, the burden of proof

concerning the coverage shall be upon the insurer . . . ." N.H. Rev. Stat. Ann. § 491:22-a (emphasis added).

Read according to its plain terms, § 491:22-a appears to place the burden of disproving coverage squarely on NHIC. But, the reality is more nuanced. As this court has previously observed, there is a distinction between the burden to prove coverage and the burden to prove the existence of an insurance policy in the first place. See Town of Peterborough v. The Hartford Fire Ins. Co., 824 F. Supp. 1102, 1110 (D.N.H. 1993) ("[T]he court determines that the New Hampshire Supreme Court would adopt the view that in suits to establish coverage under an insurance contract or policy, the party seeking to affirmatively establish coverage bears the initial burden of proving the existence and validity of the policy or contract at issue.").

Cardigan cites a line of cases that it suggests stands for the proposition that it is the insurer that always bears the burden to prove or disprove coverage. See Barking Dog, Ltd. v. Citizens Ins. Co. of Am., 53 A.3d 554 (N.H. 2012); Carter v. Concord Gen. Mut. Ins. Co., 924 A.2d 411 (N.H. 2007); Preferred Nat'l Ins. Co. v. Docusearch, Inc., 829 A.2d 1068 (N.H. 2003); Maville v. Peerless Ins. Co., 686 A.2d 1165 (N.H. 1996). But, each of these cases involves a dispute over the meaning of terms

11

in an existing insurance policy and the extent of coverage provided. These cases do not, by any means, involve questions over whether a policy existed in the first place.[3]

Accordingly, the court finds that where the parties dispute the existence of an insurance policy, it is the insured that bears the burden of proving the policy's existence. This is quite different than a scenario where the parties dispute the meaning of a mutually-acknowledged policy, which, under New Hampshire law, would plainly require the insurer to disprove coverage. See N.H. Rev. Stat. Ann. § 491:22-a.

This finding comports not only with the prior holdings of this court and of the New Hampshire Supreme Court, but with common sense as well. Cardigan would have the court impose a burden on NHIC to disprove the existence of an insurance policy that Cardigan believes to have been in place nearly fifty years ago. Taken to its logical conclusion, Cardigan's position would enable anyone facing an uninsured loss to assert (truthfully or

---

[3] Cardigan takes the position that another decision of this court, EnergyNorth Natural Gas, Inc. v. Associated Elec. & Gas Ins. Servs., Ltd., 21 F. Supp. 2d 89 (D.N.H. 1998), supports its position that an insurer bears the burden of proving coverage. There, Judge Barbadoro wrote that "if [a plaintiff] has properly based its action for declaratory relief on [§ 491:22], the burden of proof will lie with the defendant insurers to disprove [the plaintiff's] coverage claims." Id. at 90-91. However, like the New Hampshire Supreme Court cases on which Cardigan relies, EnergyNorth involved a question of coverage extent, not a question of whether an insurance policy existed at all.

not) that some insurer had issued a policy covering the loss. The burden would then fall on the hapless insurer to disprove the existence of the policy – in other words, to prove a negative. This would be illogical.

For all of these reasons, it is Cardigan that bears the burden of proving the existence of the policy that it contends was in place during the 1967-68 school year.

B.   Sufficiency of Cardigan's Circumstantial Evidence

Even after crediting the complaint's factual allegations and drawing all inferences in Cardigan's favor, D'Angola, 2011 U.S. Dist. LEXIS 130081, at *3-4, Cardigan has failed to plausibly state a claim for relief. The circumstantial evidence that Cardigan has gathered is simply insufficient to carry its burden of demonstrating the mere existence of a policy covering the 1967-68 academic year.

As an initial matter, the 1971 financial report (which is attached to the complaint) covers the period from September 1970 to September 1971, a full two years after the relevant period. Though it references NHIC, the financial report refers exclusively to policies in place from 1970 to 1971.

The additional allegations on which Cardigan relies are nothing more than speculation and conjecture. Cardigan proffers the nearly 50-year old memories of Mr. Bakker, Cardigan's former

business manager, who "does not believe" Cardigan changed insurance carriers during the relevant period.  In a similar vein, Cardigan notes that Mr. Bakker worked with a local insurance broker who, the complaint alleges "upon information and belief," had a close association at the time with NHIC.  In the absence of further evidence of the existence of the policy, these tenuous allegations do not raise a right to relief.

Separately, Cardigan offers the belief of Mr. Wheeler, the retired accountant who helped to prepare the financial report, that he would have compared the 1970 to 1971 financials to those from the previous fiscal year – 1969 to 1970.  Mr. Wheeler suggests that, in doing so, he would have noted a change in insurance.  Even if Mr. Wheeler is correct and a policy with NHIC was in place during the 1969 to 1970 fiscal year, this allegation reveals nothing about the existence of a policy during the 1967-68 school year – the only period of relevance.

Cardigan has failed to adequately plead the existence of an insurance policy and, for this reason, NHIC is entitled to dismissal.

## Conclusion

For the foregoing reasons, the court finds that although it has subject matter jurisdiction, Cardigan has failed to state a

claim upon which relief can be granted.  Accordingly, NHIC's motion to dismiss (Document No. 10) must be granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 2, 2014

cc:   Nicholas F. Casolaro, Esq.
      Andrew W. Dunn, Esq.
      Andrew Ryan Hamilton, Esq.
      Scott H. Harris, Esq.
      Jason F. King, Essq.
      Mark D. Sheridan, Esq.